UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v. ) | Cr. No. 09-10243-MLW |
| ) | |
| RYAN HARRIS, ) | |
| Defendant. ) | |

MEMORANDUM AND ORDER

WOLF, D.J.                                                    June 26, 2012

Defendant Ryan Harris was tried in this case for conspiracy to commit wire fraud and eight substantive counts of wire fraud. Before the case was submitted to the jury, pursuant to Federal Rule of Criminal Procedure 29(a), the court granted Harris' motion for judgment of acquittal on the conspiracy charge. Harris did not object to the substance of the court's instructions concerning wire fraud, although he requested certain additional instructions which the court declined to give. The jury found Harris guilty on seven of the wire fraud charges and not guilty on the eighth.

Harris subsequently filed a Post-Trial Motion for Judgment of Acquittal Notwithstanding the Verdict and for a New Trial ("the Motion"), which the government opposed. In view of the reliably summarized evidence and persuasive arguments in the government's opposition to the Motion (the "Government's Opposition"), the Motion is being denied.

The standards for deciding a post-trial motion for acquittal after trial were recently described by this court in United States v. DiMasi, 810 F. Supp. 2d 347, 351-52 (D. Mass. 2011), and are

being applied here. As indicated earlier, the defendant did not object to the substance of the court's jury instructions concerning wire fraud. The defendant challenges the sufficiency of the evidence of willful, intentional conduct, and other requirements for proving wire fraud. Among other things, the defendant argues that the evidence did no more than demonstrate that he sold a product with the knowledge that it would be used unlawfully. This contention, however, is incorrect. As summarized in the Government's Opposition, viewed in the light most favorable to the verdicts, there was ample evidence for the jury to find that Harris knowingly, willfully, and with intent to defraud participated in a scheme to defraud that would foreseeably involve the use of interstate wire communications. Therefore, he was properly convicted.

Many of Harris' arguments for acquittal are based on distorted descriptions and misinterpretations of the court's instructions. For example, Harris argues that the court instructed the jury that he had to have "participated" in a scheme to defraud with each of the three Massachusetts users - Jose LaRosa, Nathan Hanshaw, and William Madeira - by knowing each individual and communicating with each of them. Harris then asserts that the evidence was insufficient to convict him under his characterization of the instructions.

Harris' argument relies upon a misstatement of the court's

instructions, each part of which must be considered and understood "in the context of the charge as a whole rather than in isolation." United States v. Rose, 104 F.3d 1408, 1416 (1st Cir. 1997). For example, properly understood, the court's instructions did not require proof that Harris knew LaRosa, whose wire transmissions were involved in two of the counts on which Harris was convicted, or knew of LaRosa's involvement in the particular wire transmissions alleged to have been caused by Harris' scheme. Rather, the instructions only required the jury to find that Harris: knowingly and willfully participated in the alleged scheme to defraud; with the requisite intent to defraud; it was reasonably foreseeable that someone, perhaps unknown to Harris, would use an interstate wire communication to accomplish a goal of the scheme – obtaining internet service without payment to the provider; and that a particular alleged interstate wire transmission in fact occurred in furtherance of Harris' scheme. The court's instructions were compatible with the Pattern Jury Instruction for the First Circuit, which includes the statement that, "the government must prove beyond a reasonable doubt that [defendant] knew, <u>or could reasonably have foreseen</u>, that use of a wire communication would follow in the course of the scheme." Wire Fraud, 18 U.S.C. §1343 (updated 2/20/07) (emphasis added). This instruction is rooted in many First Circuit decisions which establish that it is the use of interstate wires generally, rather

than any particular wire transmission, that must have been foreseeable. See United States v. Pimental, 380 F.3d 575, 589 (1st Cir. 2004) (stating, in analogous context of mail fraud, "it is simply the 'use of the mails' in the course of the scheme rather than the particular mailing at issue that must be reasonably foreseeable for the causation element of a mail fraud offense to be satisfied"); see also United States v. Vazquez-Botet, 532 F.3d 37, 64 (1st Cir. 2008); United States v. Sawyer, 239 F.3d 31, 39-40 (1st Cir. 2001); United States v. Silvano, 812 F.2d 754, 759 (1st Cir. 1987).

Therefore, Harris' argument that there was insufficient evidence to prove that he knew LaRosa or any of the other individuals in Massachusetts who foreseeably used interstate wire communications in furtherance of his scheme is based on a misstatement of what the law and instructions required, and is not meritorious. There was ample evidence to prove each of the elements of wire fraud as the court defined them, for each count on which Harris was convicted.

In addition, without citation to any case, in his Rule 29 motion Harris briefly argues that venue in Massachusetts was not appropriate for any of the counts on which he was convicted because, he claims, there was no evidence connecting him to the Commonwealth. See Defendant's Memorandum at 13-14, 17, 20-21. Harris' presentation of this contention in his Rule 29 motion is so

perfunctory that it may properly be deemed to be waived. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("[W]e see no reason to abandon the settled [] rule that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.").

In any event, the contention that venue is not proper in the District of Massachusetts is not correct. The Constitution and Rule 18 of the Federal Rules of Criminal Procedure direct that venue lies where a crime is "committed." See U.S. Const. art. III, § 2, cl. 3; U.S. Const. amend. VI; Fed. R. Crim. P. 18. To determine where a crime has been committed for purposes of venue, courts look to the nature of the crime alleged and allow prosecution in any district where an "essential conduct element" of the charged offense has occurred. See United States v. Rodriguez-Moreno, 526 U.S. 275, 280 (1999). In a wire fraud case, venue "is established in those locations where the wire transmission at issue originated, passed through, or was received, or from which it was orchestrated." United States v. Pace, 314 F.3d 344, 349-50 (9th Cir. 2002) (internal quotation omitted); see also United States v. Kim, 246 F.3d 186, 191-93 (2d Cir. 2001).

Venue must be proven by a preponderance of the evidence. See United States v. Lanoue, 137 F.3d 656, 661 (1st Cir. 1998). However, a specific instruction on venue is required only where venue is "in issue." See United States v. Perez, 280 F.3d 318,

5

333-35 (3d Cir. 2002) (specific venue instruction is only required where venue properly "in issue"). In this case, after granting a motion for acquittal on the conspiracy charge, the court determined that it was not necessary or appropriate to give an instruction concerning venue with regard to the wire fraud counts because, for each count, the government could only obtain a conviction if it proved beyond a reasonable doubt that the particular alleged interstate wire transmission sent to or by a user in Massachusetts had in fact occurred. As explained on February 29, 2012, the court decided not to give a venue instruction because a description of the preponderance of the evidence standard might confuse the jury as to the higher reasonable doubt standard that had to be met to prove the wire fraud charge. Harris did not object to this decision. Although the jury did not make a specific determination as to venue, each of its seven guilty verdicts on particular wire fraud charges necessarily included the finding that the charged wire communications originating or received in Massachusetts in fact took place. Therefore, the jury implicitly found, based on adequate evidence, that venue was proper in Massachusetts.

It is not clear whether Harris is attempting to challenge the constitutionality of his trial in Massachusetts despite the fact that the requirements for establishing venue for the wire fraud charges in Massachusetts were satisfied. The court assumes that some constitutional limit exists on Congress' power to define

6

offenses in ways that create venue in multiple jurisdictions. See United States v. Saavedra, 223 F.3d 85, 92 (2d Cir. 2000). However, the facts of this case do not raise such due process concerns. See Rodriguez-Moreno, 526 U.S. at 280 (venue proper in any district in which an "essential conduct element" of the charged offense occurred); United States v. Johnson, 323 U.S. 273, 276 (1944) (noting Congress' broad power to define the location where an offense is committed for purposes of venue); Armour Packing Co. v. United States, 209 U.S. 56, 76-77 (1908) (declining to consider hardship on defendants of permitting venue for offense of transporting goods at illegal freight rates in each district through which the transportation was received at the prohibited rates, stating instead that "[t]o say that this construction may work serious hardship in permitting prosecutions in places distant from the home and remote from the vicinage of the accused is to state an objection to the policy of the law, not to the power of Congress to pass it").

In view of the foregoing, Harris' request for a judgment of acquittal is being denied. His motion for a new trial pursuant to Federal Rule of Criminal Procedure 33(a) is also not meritorious.

The standards for obtaining a new trial under Rule 33(a) are described in DiMasi, 810 F. Supp. 2d at 362, and are being applied here. The jury in this case rendered a discerning verdict, finding the defendant not guilty on the one wire fraud count which the

7

court indicated to the parties at trial would have been vulnerable to a motion to acquit if a guilty verdict had been returned. With regard to the seven counts of conviction, the court's assessment of the credibility of the witnesses and the weight of the evidence comports with the jury verdicts. There is no justification for granting a new trial based on the quantity or quality of the evidence.

Nor was there any error of law that justifies a new trial. The government's reference in its opening to the TCNISO online forums as a "black market" for MAC addresses was not inflammatory and was fully supported by the admissible evidence. Similarly, the evidence that Harris himself used his products to steal internet service was intrinsic to the crimes charged and was direct evidence both of the alleged scheme and of Harris' intent to defraud. It would, therefore, have been admissible under Federal Rule of Evidence 404(b), if, contrary to the court's conclusion, that Rule applied.

Finally, the government's statement in its closing that no evidence demonstrated that anyone used TCNISO products for any purpose other than to obtain internet service without making proper payment was not impermissible burden shifting. A prosecutor impermissibly shifts the burden of proof "by arguing to the jury that the defendant is obligated to present evidence of his innocence." United States v. Glover, 558 F.3d 71, 77 (1st Cir.

8

2009) (quoting United States v. Diaz-Diaz, 433 F.3d 128, 135 (1st Cir. 2005)). However, "a prosecutor is not entirely forbidden from commenting on the defendant's failure to produce evidence supporting the defendant's stated theory." Diaz-Diaz, 433 F.3d at 135. For example, in a case in which the primary focus at trial was whether a gun seized from the defendant's home was in fact the defendant's, and the defendant's theory was that he had been framed, prosecutors were found not to have impermissibly shifted the burden of proof in arguing that "[t]here's been no suggestion that [the gun] was planted there. There been no suggestion that [the defendant] didn't know it was there." United States v. Salley, 651 F.3d 159, 162, 164-65 (1st Cir. 2011). Similarly, where a defendant argued that a gun recovered from a location through which he had run from police was not his, the First Circuit concluded that the prosecutor's question, "what other explanation can there be?", was a permissible effort to refute the defendant's argument and would not have been viewed by the jury as a suggestion that the defendant was required to prove the gun was not his. See Glover, 558 F.3d at 78-79. The First Circuit has stated that, "[w]hen commenting on the plausibility of a defense theory, the government's focus must be on the evidence itself and what the evidence shows or does not show, rather than on the defendant and what he or she has shown or failed to show." Id. at 78.

The prosecutor's statements in the instant case were directed

9

at the evidence, and were not improper burden shifting.  Nor did the prosecutor argue for a conclusion that was not rooted in the evidence presented at trial.  In addition, the jury was instructed that the prosecutor's statements were only argument, not evidence, and the court immediately gave a curative instruction which reminded the jury that the defendant did not have to prove his innocence.  See Glover, 558 F.3d at 78 ("A specific curative instruction can mitigate the damage of an improper comment, and the content of the jury instructions can remedy the effects of problematic language employed in the closing argument." (internal citation omitted)).  Therefore, the prosecutor's closing argument does not justify a new trial.

In view of the foregoing, the Motion (Docket No. 147) is hereby DENIED.

_____
UNITED STATES DISTRICT JUDGE